BARTON *v.* EDWARDS.

Opinion delivered October 11, 1915.

1. CONSTITUTIONAL LAW—TAKING PROPERTY FOR A ROAD—COMPENSATION—TIME.—The payment for the taking of private property for the construction of a road, need not precede the taking of the property.

2.   CONSTITUTIONAL LAW — TAKING PROPERTY — COMPENSATION — DEPRE-
     CIATED WARRANTS—Compensation for the taking of property for a
     public road may be made in county warrants which are below
     par in value.

3.   CONSTITUTIONAL LAW—TAKING PROPERTY—DAMAGES—COLLECTION.—
     When private property has been taken for a public road, and plain-
     tiff's damages assessed, he has a clear remedy to compel the levy
     of an appropriation of funds to pay the award.

Appeal from Craighead Chancery Court; *Chas. D. Frierson,* Chancellor; affirmed.

*Basil Baker* and *Horace Sloan,* for appellant.

1.   The necessity of making just and full compensation to the owner of private property taken for public use is clearly established law in this State. The highway statute expressly provides for the assessment and allowance of compensation and damages for property so taken. Kirby's Dig., § § 2996, 3001, 3002, 3003. See also art. 12, § 9, Const. 1874; Declaration of Rights, *Id.,* § 22; 13 Ark. 198, 206, 58 Am. Dec. 321; Nichols, The Power of Eminent Domain, § 31, and cases cited; 96 U. S. 97, 107, 24 L. Ed. 616.

2.   Must the payment of compensation precede the taking of private property by an insolvent public corporation? Where the Constitution of a state specifically requires that the payment of the compensation must precede the taking, prepayment must be made. Where the Constitution does not expressly require prepayment by public corporations, one of two things must be done. (1) The amount of damages and compensation must be paid in advance, or, (2) provision must be made by law so that the owner of the property appropriated is provided with a certain and adequate fund from which he can coerce the payment with a certainty, within a reasonable time, and without risk of loss. *Supra;* 18 Wend. 1, 31 Am. Dec. 313, 334, 337; 103 Mass. 120, 4 Am. Rep. 518; 135 N. W. (Neb.) 441; 40 Wis. 674, 681; 127 Mass. 50, 53; Lewis, Eminent Domain, 2 Ed., 990, § 457; Cooley, Const. Lim.,

(7 ed.) 813; 85 Ia. 39, 51 N. W. 1142; 142 Fed. 597; 15 Cyc. 775; 10 Am. & Eng. Enc. of L., 2 Ed., 1142.

In those cases where it has been held that an order upon the public treasury provides a certain and adequate fund from which the land owner may coerce the payment of his damages, the question of the solvency of such public corporation had not been raised, and in making such statement or ruling the court necessarily had in mind a *solvent public corporation.* This is conclusively shown by the attitude taken by the courts where evidence was introduced showing insolvency. 17 Pa. St. 524; 26 Pa. St. 46; 42 O. St. 463, 469; 25 Fed. 521; 21 Fed. 257, 261; 51 N. W. 114.

The evidence as to the financial condition of Craighead County clearly shows that it is insolvent, under the ordinary test of insolvency, *i. e.,* inability to pay its obligations as they mature in the regular course of business. 80 Ark. 388, 391; 171 Fed. 540; Federal Bankruptcy Act (1898). Since the evidence is that one would have to wait at least fourteen years before he could cash his warrants and receive dollar for dollar for them, it is patent that appellant would not receive payment within a reasonable time, unless the *mere issuance of warrants, regardless of their present value,* may be deemed a present payment.

The statement of the county's financial condition does not show a fund to which appellant may resort without risk of loss. It does not show the existence of that safe, certain and adequate fund which the law requires as a condition precedent to a taking without prepayment. The constitutional guaranty amounts to no more than an abstract statement of right, if it is not enforced by the courts in actual litigation. 4 N. D. 278, 60 N. W. 392, 25 L. R. A. 838; 18 Wend. 9, 31 Am. Dec. 313, 368.

3. The tender of county warrants greatly depreciated in value and drawn against a fund which does not exist except in theory and for a purpose for which no

appropriation has been made by the levying court, does not constitute "just compensation."

Where warrants are used, under the guise of payment, as a means of postponing actual payment indefinitely by reason of the insolvent condition of the public treasury, it is evident that all the owner of the appropriated property receives is the present worth of such warrants.

Just compensation means compensation in money. Nichols, Power of Eminent Domain, § 260; 8 Black (Ind.) 246; 39 N. J. L. 665; 2 Dall. (U. S.) 304, 315; 1 L. Ed. 391; 60 N. W. 392. County warrants are not money, any more than the check of a private individual. If they are to be deemed money, their issuance is within the inhibition of section 10, art. 12, of our State Constitution, as well as obnoxious to that provision of the Federal Constitution which denies the State the right to coin money or to emit bills of credit.

What constitutes "just compensation" is a judicial, and not a legislative, question. Lewis on Eminent Domain (3 ed.), § 683; 66 N. H. 629, 33 Atl. 1076; 8 Nev. 165; 148 U. S. 312, 326.

The acceptance of warrants would deprive the owner of interest on his money. Nichols, The Power of Eminent Domain, § 285.

The argument of imperative necessity, if tenable, does not justify a payment of less than just compensation to one whose land is taken. If any constitutional provision must yield to what either the Legislature or the courts may deem to be "public necessity," then the Constitution itself is a nullity, and no protection to individual citizens. 64 Mo. 453, 561.

No appropriation was made by the levying court for opening public roads. Kirby's Dig., § § 1499-1502; art. 7, § 30, art. 16, § 12, Const.

4. Appellant has no adequate remedy at law. Even if appellant should succeed in a mandamus suit, he would have no guaranty that the quorum court would levy the necessary tax. 37 Cyc. 964; *Id.* 977, and cases cited. See also 62 Ark. 461; 88 Fed. 350, 367; 222 Fed. 562; High on Injunctions, § § 578, 580; Joyce on Injunctions, § 1312.

5. If art. 12, § 9, Const., applies to counties, appellant is entitled to compensation in advance of the taking of his property, and in money, whether the county be insolvent or not. 79 Ark. 154, 160; 113 Ark. 530, 536; 142 Fed. 597; Gantt's, § 937; 27 Ark. 202, 207.

*John R. Turney,* for appellees.

The only manner in which the county can pay the damages adjudged in favor of appellant by the circuit court for his lands, which the county seeks to appropriate, is by delivering to him county warrants. Art. 7, § 28; Kirby's Dig., § § 1159, 1375, 1451, 1459; 87 Ark. 379; 101 Ark. 32.

In paying claims against a county in county warrants, such warrants must, in the absence of the statutes, be considered as at par and no allowance made because they are at a discount. 11 Cyc. 606; 51 Mo. 205; 3 Okla. 281; 41 Pac. 592; 10 Cal. 278. In this State, the Legislature by specific enactment has forbidden the allowance of any greater amount because of any supposed or real depreciation in the value of county warrants. Kirby's Dig., § 1452. The words "claim or demand" as used in the statute include a claim arising for lands appropriated for a public road, even when the appropriation is unlawful. 92 Pac. 697; 125 N. W. 248; 83 N. Y. 514.

Appellant must be held to have acquired his property subject to the sovereign right of the county to take and damage the same by the construction of the road, and to discharge liability therefor in the manner prescribed by law, *i. e.,* in county warrants. 142 Fed. 597.

This court has already decided adversely to appellant's contention that art. 12, § 9, Const., applies to counties. 114 Ark. 334.

His sole reliance, therefore, must be upon section 22, of the Bill of Rights, where he is in no, better case.

Since the *honesty*, not the *solvency*, of a sovereign and its agencies is always conclusively presumed, it is not necessary for a county to prepay the damages before the appropriation of the property. The requirement that compensation be made is complied with when the damages are made a charge upon the county funds for which the credit of the county is pledged. Cooley, Const. Limitations, 560; Lewis, Eminent Domain, 456; 25 L. R. A. 845; 20 Johns. 735; 15 N. W. 403; 18 N. W. 463; 6 N. W. 457; 13 Atl. 62; 81 Atl. 324; 113 N. W. 248; 18 Wend. 16; 41 Wis. 680; 51 N. W. 1014; 70 L. R. A. 450; 33 N. J. Eq. 632.

The contention that because appellant may be temporarily delayed in the collection of his warrants, during which time he will be unable to demand interest, is without merit. Even in the absence of any constitutional provision the denial of interest upon an allowance of damages for land appropriated under the power of eminent domain is not a prohibited taking of property without compensation. 66 Mass. 508, 33 L. R. A. 43; 1 Wils. 290; 2 N. H. 42.

McCULLOCH, C. J. A public road was, by order of the county court, established through appellant's land in Craighead County, the proceedings for laying out the road being conducted in accordance with the statutes on that subject, and appellant was awarded the sum of $575.00 as compensation for his damages. County warrants of that county are considerably below par, and appellant refused to accept a warrant and insists that the county must in some way pay him his damages in money before the land can be taken for use as a public road. He instituted this action in the chancery court against the

county judge to prevent the opening of the road before compensation is paid to him in money. The chancellor decided against appellant and dismissed his complaint for want of equity, and he insists here on appeal that the constitutional guaranty with respect to payment of compensation for property taken for public use has not been complied with.

Counsel seem to rely upon two provisions of the constitution: First, Sec. 9, Art. XII, which reads as follows: "No property, nor right-of-way, shall be appropriated to the use of any corporation until full compensation therefor shall be first made to the owner, in money, or first secured to him by a deposit of money, which compensation, irrespective of any benefit from any improvement proposed by such corporation, shall be ascertained by a jury of twelve men, in a court of competent jurisdiction, as shall be prescribed by law." That section was intended, however, to apply only to the exercise of the right of eminent domain by private corporations and has no application to the exercise of that power by the State or subdivisions thereof. We held recently in the case of *City of Paragould* v. *Milner,* 114 Ark. 334, 170 S. W. 78, that the provision just quoted has no application to condemnations by municipal corporations.

(1-2) The declaration of rights (Section 22) announces the principle that the right of property is before and higher than any constitutional sanction, and that "private property shall not be taken, appropriated or damaged for public use without just compensation therefor." This provision of the Constitution is relied on by counsel for appellant in their contention that payment or a provision for payment in depreciated county scrip can not be treated as compensation within the meaning of the language of the Constitution. It is argued that the words "just compensation" mean payment in money, and that nothing else will conform to the constitutional guaranty. The use of the word compensation alone implies payment in money, but the fact that the emphatic language used in Sec. 9, Art. XII, is not employed in the dec-

laration of rights shows that the framers of the Constitution did not mean to require actual payment in money before the State or a county or municipality could exercise the right of eminent domain. The law was well settled to the contrary long prior to the adoption of the Constitution of 1874, and it is to be presumed that the framers of the Constitution used the word in the light of its interpretation by courts when used under similar circumstances. It has quite generally been held, under similar provisions of the Constitution, that payment need not precede the taking of the property.

Judge Cooley wrote as follows on that subject: "When the property is taken directly by the State, or by any municipal corporation by State authority, it has been repeatedly held not to be essential to the validity of a law for the exercise of the right of eminent domain, that it should provide for making compensation before the actual appropriation. It is sufficient if provision is made by law by which the party can obtain compensation, and that an impartial tribunal is provided for assessing it. The decisions upon this point assume that, when the State has provided a remedy by resort to which the party can have his compensation assessed, adequate means are afforded for its satisfaction; since the property of the municipality, or of the State, is a fund to which he can resort without risk of loss." Cooley's Constitutional Limitations (7 ed.), p. 813.

The same principle is announced in somewhat different language in many decisions. The Supreme Court of Wisconsin, in the sase of *State ex rel. Burbank* v. *City of Superior,* 81 Wis. 649, said: "Where property is taken for a public use by a municipal or *quasi*-municipal corporation, the taxable property thereof constitutes a fund to which the owner may resort in the way pointed out by law, and the existence of a method by which payment may thus be compelled satisfies the constitutional requirement."

The same doctrine has been announced by the New Jersey courts in the following language: "But it is not necessary that compensation should precede the actual appropriation, where the property is taken by the State, or by a municipal corporation by State authority. It is sufficient that an adequate remedy is provided, which the party may resort to on his own motion to recover compensation." *Loweree* v. *City of Newark*, 38 N. J. Law 151.

The same rule is announced in many decisions of the New York court of last resort, and the only exception found in the cases of that State is the case of *Sage* v. *City of Brooklyn*, 89 N. Y. 189, where the court, after stating the rule generally recognized, held that where the owner was remitted to a fund not obtained by general taxation but by taxation on benefits within a limited district, the constitutional guaranty was not satisfied.

There is, indeed, some authority for the position of counsel, and Mr. Lewis in his work on Eminent Domain, Vol. II, Sec. 679, after stating the general rule, adds this exception: "But, if it can be shown that the resources of a municipal corporation, from taxation or otherwise, are insufficient to enable it to make compensation in a reasonable time, an entry will be enjoined until security is given." Only one case is cited in support of that statement, namely, the case of *Keene* v. *Bristol*, 26 Pa. St. 46. We do not think that the rule stated by that author is in accord with sound reason on the subject and we decline to adopt it. It would be an unsafe rule to say that the power of the State, or its subdivisions, such as counties and municipalities, in the exercise of the right of eminent domain, is impaired by inability to make immediate payment, unless it is so expressed in the letter of the Constitution. There ought to be and is a presumption that the public purse will prove sufficient to meet all just demands, and that unless the Constitution expressly provides for payment in money in advance of the taking of property, it is to be presumed that language such as is ordinarily found in state constitutions prohibiting the taking of property without compensation refers to the usual

method of payment by the State or its subdivisions. The only way in which demands against a county can be paid is by a warrant on the treasury (*Rolfe* v. *Spybuck Drainage District*, 101 Ark. 32), and every citizen in dealing with the State or county or municipality must take chances on that method of payment. The county could not exercise its function if anything more should be exacted. It works a hardship in exceptional instances, where county scrip is depreciated, to require a citizen to accept compensation in depreciated warrants, but that is one of the exceptional burdens which the citizen is expected to bear. County warrants are receivable for county taxes, and in this way the policy of the law is to give them the greatest facility for circulation. It is thought that by reason of the fact that warrants are thus receivable for taxes, and are payable out of funds found to be in the treasury when presented, the citizen is given satisfaction for any demand against the county, either voluntary or involuntary. The language of our Constitution was framed with reference to that method of payment, and it is to be presumed that its framers intended to express that meaning in the use of the words "just compensation," to be rendered to one whose property is taken for public use.

(3) It is further insisted that the award of damages is void, and that appellant can not be accorded just compensation, for the reason that the quorum court has made no specific appropriation for expenditures on roads. It is sufficient to say, however, that the constitutional guaranty is answered by general laws which afford means to the land owner of obtaining compensation. There has been an assessment of his damages and he has a clear remedy to compel the levy of an appropriation of funds to pay the award. This is sufficient to dispose of the case without undertaking to pass upon the question whether or not a specific appropriation of road funds is necessary under the constitutional amendment which authorizes the levying court to make an additional levy of three mills for

road purposes when a majority of the electors have voted in favor of it at the preceding election.

The decree of the chancellor is affirmed.

Smith, J., dissents.