## CRAWFORD COUNTY *v.* SIMMONS.

### Opinion delivered January 16, 1928.

1. HIGHWAYS—PETITION FOR CHANGE OF ROAD—PRESUMPTION ON COLLATERAL ATTACK.—On collateral attack an order of the county court changing a public road under Acts Sp. Sess. of 1923, p. 84, § 69, could not be held void because it was not signed by the State Highway Commission, but was signed by an engineer of that department, since it will be presumed that the engineer had a right to sign the petition for the State Highway Commission, and that he did so.

2. HIGHWAYS—CHANGE OF ROAD—NOTICE TO LANDOWNERS.—An order of the county court for the change of a public road on petition of the State Highway Commission under Acts Sp. Sess. of 1923, p. 84, § 69, and Crawford & Moses' Dig. § 5249, was not void because no notice was given to the landowners.

3. EMINENT DOMAIN—TAKING PROPERTY FOR PUBLIC USE—PAYMENT.—An order of the county court for the change of a road under Crawford & Moses' Dig., § 5249, and Acts of the Sp. Sess. of 1923, p. 84, § 69, giving landowners within one year after date or the order laying out the road the right to file claims in the county court and have an assessment of damages, and providing that direct payment shall be paid out of the county treasury, was not void as a taking private property for public use without compensation, since payment for taking private property for construction of public roads need not precede the taking of the property.

4. EMINENT DOMAIN—RIGHT OF LANDOWNERS TO ENJOIN CONSTRUCTION OF HIGHWAY.—To give equity jurisdiction of a suit by landowners to enjoin the taking of their lands for highway purposes on the

ground that they had no adequate remedy at law, where the payment did not precede the taking of their property, plaintiffs were required to allege and prove that there was no sure and certain way for them to be paid.

5. EMINENT DOMAIN—TAKING OF LAND FOR ROAD—BURDEN OF PROOF. —In a suit by landowners to enjoin the county and the State Highway Commission from entering on their lands and laying out a highway, the burden was on plaintiffs to prove that there were no funds on hand in the county treasury with which to pay their claims for damages, since solvency of the State and her political subdivisions is presumed, in the absence of a showing to the contrary.

Appeal from Crawford Chancery Court; *J. V. Bourland*, Chancellor; reversed.

STATEMENT OF FACTS.

J. H. Simmons and other landowners of Crawford County brought this suit in equity against Crawford County and Dwight Blackwood as State Highway Commissioner, to enjoin them from entering upon their lands and laying out a new highway on them for the purpose of changing the part of the public road of Crawford County which is a part of State Highway No. 71, and under the control of the State Highway Department.

According to the allegations of the complaint, on the 20th day of September, 1927, Dwight Blackwood, as State Highway Commissioner, filed a petition in the Crawford County Court asking that the location of Highway No. 71 be changed as set out in the petition. The change provided for caused the highway to be altered so as to be constructed over and through the lands of the plaintiffs, thereby destroying their crops and orchards, and taking and damaging their lands, without first giving them notice of the filing of the petition, or without making compensation to them for the damages sustained by the taking of their lands for the purpose of altering said Highway No. 71. The petition for the change and alteration of said public road is made an exhibit to the petition, and is signed State Highway Commission for the State of Arkansas, by W. W. Mitchell, assistant State Engineer.

On the 3rd day of October, 1927, the petition was presented to the county court, and the changes asked for are specifically set out in the order granting the prayer of the petition.

It was adjudged by the county court that the changes petitioned for should be made in State Highway No. 71 as located and described in the petition and in the order granting the prayer of said petition. It was further ordered that any landowner who was affected by the order, and who was damaged by reason of the change of the road to be constructed over his land, must present his claim to the county court within one year from the date of the order, or be forever barred. The plaintiffs allege that their damages are in excess of $10,000, and that the defendants are undertaking to enter upon their land and construct said public road without first paying the damages suffered by the plaintiffs. The complaint further alleges that Crawford County is without funds to pay the plaintiffs the damages suffered by them by the laying out of the road over their land.

The defendants denied that they have failed to provide just compensation to the plaintiffs for any damage suffered by them by the location of said public road over their lands, and aver that Crawford County has on hand appropriations made by the quorum court out of its general funds sums sufficient to pay all claims of the plaintiffs. In another paragraph of the answer they say it is not true, as alleged in the complaint by the plaintiffs, that Crawford County is without funds wherewith to pay all claims of the plaintiffs arising out of the condemnation of their lands for said public road. The answer also contains the following:

"They deny that the claims for damages will be in excess of $10,000, and deny that damages have accrued or will accrue to plaintiffs and to all claimants affected by changes in section 15 of United States Highway No. 71, described in plaintiffs' complaint, which will approximate the sum of $10,000. They say that, even if said claims should amount to $10,000, and even if the legally

determined damages should be in excess of said amount, Crawford County has on hand sufficient funds to pay all of said damages. That it has in its general funds $3,000, which can be used for such purpose, and the sum of $7,500 appropriated by its quorum court for roads and bridges, and that it has at its disposal private donations in excess of $1,000.''

The chancery court found the issues in favor of the plaintiffs, and the defendants were enjoined from attempting to enter on the lands of the plaintiffs and from constructing a road according to the plans and specifications set forth in the petition filed in the county court. The case is here on appeal.

*George Stockard, Daily & Woods, Hill, Fitzhugh & Brizzolara, H. W. Applegate,* Attorney General, and *Claud Duty,* Assistant, for appellant.

*Dave Partain,* for appellee.

HART, C. J., (after stating the facts). The record shows that a public road under the charge of the State Highway Commission was changed in Crawford County so as to be laid out and constructed over the lands of the plaintiffs. The change in the location of the road was made pursuant to the provisions of § 5249 of Crawford & Moses' Digest. The petition for the change in the location of the road was made by the State Highway Commission under the provisions of § 69 of act 5, passed by a special session of the Legislature in 1923. Acts of 1923, Special Session, p. 11. Under the provisions of § 69 the State Highway Commission is authorized to call upon the county court to change or widen, in the manner provided by § 5249 of Crawford & Moses' Digest, any State highway in the county where the State Highway Engineer deems it necessary for the purpose of constructing, improving or maintaining the road.

It is first contended that the order of the county court is void because the petition for the change of the road was not signed by the State Highway Commission, but was signed by an assistant engineer of that department. This is not a direct attack upon the order of the

county court by appeal, but is a collateral attack upon the order made in the chancery court. Hence there is a presumption that the State Engineer had a right to sign the petition for the State Highway Department, and that he did so. *Morrow* v. *Mock,* 151 Ark. 392, 236 S. W. 610.

Again, it is insisted that the order is void because no notice was given to the landowners. This contention of the plaintiffs has been settled against them by the ruling of this court in *Sloan* v. *Lawrence County,* 134 Ark. 121, 203 S. W. 260. In the construction of § 5249 relative to the laying out or altering of public roads, it was held valid in so far as it provides for the taking of private property by the order of the county court for a public road, without notice to the interested landowners, or a determination for the necessity thereof. The court said that the power of eminent domain may be exercised by the State without notice to the interested landowners, because the necessity of condemnation for public use is a political one, and not one for judicial determination.

The soundness of this decision is questioned by the plaintiffs, but we will not again review the authorities on the subject, because we consider the matter a closed one in this State. In the decision just cited the court recognized that there was a conflict in the decisions, and deliberately adopted the rule announced in the case. Two of the Judges dissented, thereby showing that the question was thoroughly considered. The rule announced in that case has been reaffirmed by subsequent decisions of the court. *Burns* v. *Harkington,* 162 Ark. 162, 257 S. W. 729; *Independence County* v. *Lester,* 173 S. W. 796, 293 S. W. 743; and *Casey* v. *Douglas,* 173 Ark. 641, 296 S. W. 705. Therefore we hold that the contention of plaintiffs, that there was no notice of the proceeding to lay out the road over their lands, can avail them nothing. The order of the county court gave the landowners, within one year after the date of the order laying out the road and entering of their lands, the right to file their claim in the county court and have an assessment of damages

by prescribed legal proceedings, and direct payment was to be made them out of the county treasury.

But it is insisted by counsel for the plaintiffs that this action permits the taking of private property for public use without making compensation therefor, as provided in our Constitution. This point, too, has been settled against the contention of the plaintiffs in the case of *Barton* v. *Edwards*, 120 Ark. 239, 179 S. W. 354. In that case it was expressly held that the payment for the taking of private property for the construction of a public road need not precede the taking of the property. There again it was recognized that there is a conflict in the authorities; but the court held that, while compensation must actually be made or the means provided by which it can certainly be obtained, where property is taken for a public use by the State itself or by one of its duly authorized subdivisions, the taxable property thereof constitutes a fund to which the owner may resort in the way pointed out by law, and the existence of a method by which payment may thus be compelled, satisfies the constitutional requirement. In one of the cases cited in the opinion it is said that the pledge of the faith and credit of the State, or of one of its political divisions, for the payment of the property owner, accompanied with practical and available provisions for securing the application of the public faith and credit to the discharge of the constitutional obligation of payment, has been held to be a certain and sufficient remedy within the law. For this reason it was held by us that compensation for the taking of property for a public road may be made in county warrants which are below par in value. The court pointed out that county warrants are receivable for county taxes, and the policy of the law is to give them the greatest facility of circulation. It is also pointed out that the landowner has a clear legal remedy to compel the levying of an appropriation of funds to pay the award. Thus it will be seen that this court has deliberately held that a statute which authorizes a political division of the State to take private property for public use, if it pro-

vides an adequate process for ascertaining and paying the value of such property, is constitutional. It is considered that, when an adequate fund is provided from which payment is to be made by a political subdivision of the State, this is equivalent to actual compensation.

This view of the matter was substantially reaffirmed in *Morrow* v. *Mock,* 151 Ark. 392, 236 S. W. 610, where it was held that equity will not restrain the attempted enforcement of a judgment where the remedy at law is complete. In cases of this sort the landowner has a clear remedy at law, because he might present his claim to the county court for damages, and take an appeal from any ruling considered adverse to his interest. Under the order of the county court, the landowner was entitled to payment out of the county treasury, after the amount of his damages had been ascertained.

But it is contended that this is not a certain and safe means of payment, under the decision of *Independence County* v. *Lester, supra,* and *Casey* v. *Douglas, supra,* in the construction of Amendment No. 11. In *Independence Co.* v. *Lester, supra,* there was an affirmative showing in the record that there were no funds in the county treasury out of which the landowner might be paid. The county court, according to the pleadings and the agreed statement of facts in the record in that case, had condemned land for a highway, and at the same time had refused to allow the landowner compensation, on the ground that the court was without authority to allow the claim because the fiscal year had expired and the revenues were exhausted. Under the facts there stated, the landowners would have no remedy whatever. All of the available funds in the county treasury had already been used for the various running expenses of the county government under the provisions of the appropriation made by the quorum court.

Again, in *Casey* v. *Douglas, supra,* the court, in effect, held that the county court could not take the property of the landowner without first paying him dam-

ages, where the order contemplated that the payment of damages should be made by private individuals. The reason is that, in such case, the faith and credit of the county is not pledged, and the record contained an affirmative showing that the damages and compensations were to be paid out of a special fund provided by landowners. In this state of the record, the taking of the land would not be proceeded with until the fund was deposited in the county treasury for the purpose of paying the damages. The mere fact that private individuals might have sufficient funds on hand, pledged to pay the damages, does not meet the constitutional requirement.

In the application of these principles, in order to invoke the jurisdiction of a court of equity, the plaintiffs must allege and prove that the annual revenue of the county from the levying and collection of county taxes is insufficient to pay the landowners, after meeting all the demands upon the general county revenue fund under the specific appropriations of the quorum court for the current year. In other words, in order to give courts of equity jurisdiction on the ground that the plaintiffs had no adequate remedy at law, it devolves upon them to show that there was no sure and certain way for them to be paid. Plaintiffs did not meet this requirement by simply alleging such a fact to be true. The answer specifically denied this to be true. It is true that it contains an averment that there are certain funds on hand out of which the payment might be made, and the plaintiffs pointed out that these funds have been exhausted. These matters, however, should be shown by the proof. It is not sufficient merely to allege them. The solvency of the State and her political subdivisions is presumed, in the absence of a showing to the contrary. *Zimmerman* v. *Canfield,* 42 Ohio St. Reps. 463; *Talbot* v. *Hudson,* 16 Cray (Mass.) 431; *Hill* v. *United States,* 9 How. 386, 13 L. ed. 185; and Mills on Eminent Domain, § 126.

Hence it did not devolve upon the defendants to show that there were sufficient funds on hand in the county treasury to pay the claims of the plaintiffs for

compensation, but the burden was upon the plaintiffs to prove that there were no funds on hand in the county treasury with which to pay their claims for damages.

Having failed to make such a showing, the chancery court erred in restraining the defendants from proceeding to enter upon the lands of the plaintiffs and constructing the road. For that reason the decree will be reversed, and the cause will be remanded, with leave to the plaintiffs to introduce proof that there were not sufficient funds on hand in the county treasury to pay their claims for damages, if they are advised to take such a course; and the chancery court is directed to take such further proceedings as are consistent with the principles of a court of equity and not inconsistent with this opinion. It is so ordered.