GEORGE B. DARR, APPELLANT, v. DAWSON COUNTY, APPELLEE.

FILED JANUARY 31, 1913.   No. 16,780.

1. **Taxation: LEVY: INJUNCTION.** When a tax is not void as assessed without authority of law, sections 162 and 163 of the revenue law (Comp. St. 1911, ch. 77, art. I) apply, and collection thereof cannot be enjoined, unless the tax was levied "for an illegal or unauthorized purpose," and those sections provide a remedy in other cases in which injunctions were formerly allowed.

2. ———: ILLEGAL ASSESSMENT: REMEDY. The remedy provided for the taxpayer by the first subdivision of section 162 is available only when the property was wrongfully assessed, either because exempt from taxation or because the tax levied had already been assessed thereon and paid:

3. ———: ———: ———. The remedy given by the first subdivision is not available to correct overvaluation, or mistake in estimating the amount of the money of the taxpayer on hand liable to assessment or the value thereof.

4. ———: ———: ———. Under the second subdivision of section 162, the tax must be paid "in all respects as though the same was legal and valid." Protest is not necessary, nor allowed. The taxpayer must, within 30 days after paying the tax, "demand the same in writing from the treasurer of the state, of the county, city, village, township, district, or other subdivision, for the benefit, or under the authority, or by the request of which the same was levied." The treasurer of such political subdivision, when such demand is made, must transmit a copy thereof "to the authorities authorized by law to audit and pay accounts against" the political subdivision which has received the illegal tax, and, if payment is refused, the taxpayer may sue such county, city, or other corporation.

5. ———: ASSESSMENT: REMEDY. Questions of valuation and of

amount and value of money or other personal property to be assessed are not provided for by sections 162 and 163 of the revenue law, and must be presented to the proper board of equalization.

6. ———: Rules Governing. The assessment and levy and collection of taxes are not equitable proceedings. They must necessarily be governed by rules which in many respects may be considered arbitrary. The taxing powers and the taxpayers must comply with these rules.

7. ———: Assessment: Relief. The taxpayer is entitled to a copy of the assessment when completed by the assessor. He may waive this and ascertain the amount of his assessment from the records before the meeting of the board of equalization, and, if dissatisfied with his assessment, he may appeal to that board and have it corrected. If he fails to do so, he cannot for that reason avail himself of the special remedies provided by sections 162 and 163 of the revenue law.

Appeal from the district court for Dawson county: Bruno O. Hostetler, Judge. *Affirmed.*

*Warrington & Stewart,* for appellant.

*E. A. Cook, contra.*

Sedgwick, J.

Plaintiff seeks to recover from Dawson county $402 paid by him under protest for taxes. He filed his claim with the county board, and, from an order disallowing it, appealed to the district court. In his petition in the district court, he alleged that in the month of April, 1908, his personal property was assessed for taxation by the deputy assessor of Lexington precinct, Dawson county, Nebraska; that he entered all his personal property that was liable to be assessed to him for that year on the schedule furnished him by the said deputy assessor for that purpose; "that plaintiff verified and signed said schedule as required by law, and returned said schedule to said deputy assessor; that (on) said schedule of assessment plaintiff entered his cash on hand at $465, the same being all the cash plaintiff had on the 1st day of April, 1908, and the said item ap-

peared on said schedule when it was returned to said deputy assessor by plaintiff as aforesaid; that, after said schedule had been so made and returned to the assessor, some person, unknown to the plaintiff, and without the knowledge or consent of the plaintiff, and without notice to him, wrongfully changed the said item of cash, $465, so that it read $30,465, and thereafter plaintiff was taxed on said item upon the basis of $30,465, instead of on the basis of $465, as returned by plaintiff aforesaid, whereby plaintiff was wrongfully assessed on one-fifth of said $30,000 in the sum of $402; that the plaintiff was absent from the state of Nebraska from about the 15th day of April, 1908, until about the 1st day of November, 1908, and had no notice or knowledge of said wrongful change in his assessment or schedule until after his return to the state as aforesaid; that on the 15th day of April, 1909, plaintiff, being absent from Dawson county, caused said taxes to be paid under protest, for the reasons aforesaid, as to the taxes so wrongfully levied on the one-fifth of the said $30,000, and thereafter filed his application with the board of county commissioners of said county, asking that said taxes so wrongfuly assessed against him be refunded, which application was by the said board of commissioners rejected." The trial court sustained a demurrer to the foregoing petition, and from a dismissal of the proceeding plaintiff has appealed to this court.

It is not contended that the tax was levied for an illegal or unauthorized purpose. The allegation is that, after the plaintiff had made out his schedule of personal property, and had stated thereon an item of $465, some person, unknown to plaintiff, had changed the item to $30,465, without the knowledge of the plaintiff. The question is whether plaintiff is entitled to relief under sections 162 and 163 of the revenue law. The sections are as follows:

Section 162. "No injunction shall be granted by any court or judge in this state to restrain the collection of any tax, or any part thereof hereafter levied, nor to restrain the sale of any property for the nonpayment of any

such tax, except such tax or the part thereof enjoined, be
levied or assessed for an illegal or unauthorized purpose;
nor shall any person be permitted to recover by replevin,
or other process, any property taken or restrained by the
county treasurer for the nonpayment of any tax except
such tax be levied or assessed for illegal or unauthorized
purpose; but in every case the person or persons claiming
any tax, or any part thereof, to be for any reason invalid,
who shall pay the same to the county treasurer, may pro-
ceed in the following manner, viz.: First. If such person
claim a tax, or any part thereof, to be invalid for the rea-
son that the property upon which it was levied was not
liable to taxation, or that said property has been twice
assessed in the same year and taxes paid thereon, he may
pay such taxes under protest to the county treasurer, or
other proper authority, and it shall be the duty of the
treasurer, or other proper authority receiving such tax,
to give a receipt therefor, stating thereon that they were
paid under protest, and the grounds of such protest,
whether or not taxable or twice assessed, and taxes paid
thereon. If such taxes are paid to the proper authority,
other than the county treasurer, such persons so receiving
them shall, within ten days thereafter, deliver such taxes,
or such part thereof as are paid under protest to the
county treasurer, together with a copy of the receipt given
for the same, and the county treasurer shall retain the
money so paid under the protest until otherwise directed
by order of the county board. Within thirty days after
paying such taxes the person paying them shall file a
statement in writing, duly verified, with the county board,
setting forth the amount of tax paid under protest, the
grounds of such protest, and shall attach thereto the re-
ceipt taken for said taxes. Whereupon at the first meet-
ing of the county board thereafter, they shall inquire into
the matter and if they shall find either that the property
upon which taxes were levied was not liable for taxation,
or that it had been twice assessed in the same year, and
taxes paid thereon, they shall issue an order to the county

Darr v. Dawson County.

treasurer to refund said taxes, stating therein what sum shall be refunded, and if they shall find that the grounds of such protest are not true, they shall issue an order to the county treasurer to dispose of said money in the same manner, as though it had not been paid under protest. Appeals may be taken from such decisions in the same manner and within the times as appeals are now taken from the action of the county board in allowance or disallowance of claims against the county; and if such an appeal be taken the county treasurer shall retain such taxes until the case is finally determined. Provided, that he shall in all cases retain said money until the time for an appeal shall have elapsed. If an appeal from the decision of the county board be taken, and upon the final determination thereof their decision be affirmed, the treasurer shall at once carry the order of said board into effect; but if their decision be reversed, they shall issue a new order to the treasurer conforming to the decree of the court finally determining the case. In all cases where the treasurer shall refund such taxes he shall write opposite such taxes in the tax list the words, 'Erroneously taxed—refunded.' Second. If such person claim the tax or any part thereof to be invalid for the reason that it was levied or assessed for an illegal or unauthorized purpose, or for any other reason except as hereinbefore set forth, when he shall have paid the same to the treasurer, or other proper authority, in all respects as though the same was legal and valid, he may, at any time, within thirty days after such payment, demand the same in writing from the treasurer of the state, of the county, city, village, township, district, or other subdivision, for the benefit, or under the authority, or by the request of which the same was levied, and if the same shall not be refunded within ninety days thereafter, may sue such county, city, village, township, district, or other subdivision, for the amount so demanded; and if upon the trial it shall be determined that such tax, or any part thereof, was levied or assessed for an illegal or unauthorized purpose, or was for any

reason invalid, judgment shall be rendered therefor, with interest, and the same shall be collected as in other cases."

Section 163. "When any demand to refund taxes paid is made upon any treasurer, as provided in the second method of procedure indicated in the preceding section, such treasurer shall transmit a copy of the same to the authorities authorized by law to audit and pay accounts against the state, county, city, township, village, or district, as the case may be, who shall pass upon the same as upon any other claim, but no claim for refunding such taxes shall be paid unless it appears to the satisfaction of such authorities that the sum was levied for an illegal or unauthorized purpose." Comp. St. 1911, ch. 77, art. I, secs. 162, 163.

If it is claimed that a tax is invalid because the property upon which it was levied was not liable to taxation or because the said property has been twice assessed in the same year and the tax paid thereon, the alleged invalid tax may be paid under protest, under the first subdivision of section 162.

Section 144 of the revenue act of 1879 (laws 1879, p. 334) provided that no injunction may be brought to restrain the collection of taxes on any other ground than that the tax was levied for an illegal or unauthorized purpose. It attempted to provide a statutory remedy for other cases in which taxes had been enjoined in the absence of such a statute. The remedy provided in the first act was that, when a person claimed that a tax was for any reason invalid and should pay the tax "in all respects as though the same was legal and valid," he might demand the same in writing from the treasurer of the state or political subdivision "for the benefit, or under the authority, or by the request of which the same was levied;" and if the tax was not repaid to him he might sue the county or other subdivision, as the case might be, and recover the same, if it appeared that the tax was levied for an illegal or unauthorized purpose, *"or was for any reason invalid."* The next section of that act (section 145) pro-

vided: "When any demand to refund taxes paid is made upon any treasurer, as provided in the preceding section, such treasurer shall transmit a copy of the same to the authorities authorized by law to audit and pay accounts against the state, county, city, township, district, or village, as the case may be, who shall pass upon the same as upon any other claim, but no claim for refunding such taxes shall be paid, unless it appears to the satisfaction of such authorities that the same was levied for an illegal or unauthorized purpose, or that the same property has been twice assessed in the same year, and taxes paid thereon, or that such property was not liable to taxation." One section provided that the taxpayer might recover in such case if the tax was "for any reason invalid," and the other section provided that the authorities should not refund the tax unless it was levied for an illegal or unauthorized purpose, or that the same property had been twice assessed the same year, and taxes paid thereon, or that such property was not liable to taxation, limiting the right to repay the contested tax to these three grounds.

In 1887 these two sections were amended. Laws 1887, ch. 69. The words "that the same property has been twice assessed in the same year, and taxes paid thereon, or that such property was not liable to taxation" were omitted from section 145 and placed in the first subdivision of the preceding section. The only change in section 144 of the first act was to insert the right to pay under protest and recover from the county when the property taxed was not liable to taxation, or was assessed twice and the first assessment paid. This provision appears now as the first subdivision in section 162, and the second subdivision of that section remains substantially the same as first enacted in 1879. In determining the application of the remedy provided by those sections, we should consider that they were enacted in view of the law as it was formely administered, and construe them in that light. We must consider the conditions that existed, the evil that it was proposed to remedy, and the remedy provided. In the ab-

sence of such a statute, Judge Cooley says that injunctions were allowed: (*a*) Where taxes were levied on exempt property; or (*b*) where property was doubly assessed; or (*c*) where levied without authority of law by persons having no power to make the levy; or (*d*) where there was a clear case of fraud in making the valuation. 2 Cooley, Taxation (3d ed.) 1441, 1442. It would seem that these are the only cases in which it ought to be held that taxes may be paid and recovered back under section 162. In the absence of a statute of this kind, taxes were not enjoined by courts of equity on the ground that they were illegal or erroneous. 2 Cooley, Taxation (3d ed.) 1440. The statutory remedies were considered to be sufficient for such purposes.

The legislature, having these grounds for injunction in mind, substituted the remedy supposed to be more simple, more just to the taxpayers, and more certain in its operation in the collection of the public revenues. If the property was exempt from taxation, or if it had already been assessed for that year and the tax paid, those questions were simple and could be easily determined. They are therefore referred to the county board for determination.

The plaintiff did not attempt to proceed under the second subdivision of section 162. He paid the tax under protest, and appealed to the county board for a return of the money so paid. The second subdivision does not provide for or contemplate payment under protest. It is only applicable when the taxpayer has paid the tax "in all respects as though the same was legal and valid." When so paid the tax cannot be recovered from the county, unless the tax was levied "for the benefit, or under the authority, or by the request" of the county. If any other political district or subdivision procures for its benefit a tax to be levied for an illegal or unauthorized purpose under this second subdivision, it can only be collected from such "city, village, township, district, or other subdivision," as the case may be, for which it was levied; and, under this subdivision of section 162, the taxpayer must, within 30

days after he paid the tax, "demand the same in writing" from the treasurer of the particular subdivision benefited by the tax. As none of these things were done, the plaintiff cannot claim under this second part of section 162.

It seems equally clear that his claim is not within the first remedy provided by that section. Our statute exempts certain specified property from taxation. If a tax is assessed upon property exempt and "not liable to taxation," or assessed a second time after the tax has already been paid upon the property, it may be paid under protest; and, if the proper steps are taken by the taxpayer, the money so paid is not distributed to the various political subdivisions for whose benefit taxes in general are levied and collected; it is held until the county board can ascertain whether the property taxed is exempt from taxation under the statute, if that is the ground of protest, or whether the tax upon the property had already been paid before the protested tax was collected. A second assessment after the tax has been paid is practically the same thing as an assessment on property which the statute exempts, and a tax so collected is summarily returned by the county treasurer upon order of the county board. The matter so presented for determination is entirely different in character from questions of valuation, and disputes as to the amount or value of money that the taxpayer has at the time of assessment, whether he has and should be assessed on $400, or some other amount, is not a question of exemption from taxation, nor of second assessment on the same property.

The plaintiff says that he had only $465 in money at the time this assessment was made. The assessor found that he had a much larger amount. This question could have been determined readily by the board of equalization, and it appears to be the policy of the law that all such questions should in the first instance be presented to that board. The assessment and levy and collection of taxes are not equitable proceedings. They necessarily have to be governed by rules which in many cases must be con-

sidered to be arbitrary. There is no way to avoid it, and the taxing power and the taxpayers must comply with these rules. There is no other way to do. Plain rules of ·law that will be readily understood by the assessing authorities and by the taxpayer are very desirable. To say that Mr. Darr has been wronged by this assessment is to say, not only that he actually had no more than the $465 in money, but also that the statute did not provide him any method of summarily disposing of the question. Whether he had $465 or $30,465 was a question of fact that was in the first instance submitted to the assessor, and if wrongly determined might be submitted to the board of equalization. The board of equalization has no power to add other property to the list returned by the individual taxpayer or increase the valuation without notice to the taxpayer. If it attempts to do so, or otherwise violates substantial provisions of the statute intended to protect the taxpayer, the tax is "levied without authority of law." They are without authority to make such levy, and the tax may be enjoined. *South Platte Land Co. v. Buffalo County,* 7 Neb. 253; *Suydam v. County of Merrick,* 19 Neb. 155; *State v. Edwards,* 26 Neb. 701. The plaintiff alleges that he does not know who added to the list as he returned it to the assessor. If the board of equalization did, it was without authority of law, because no notice was given the taxpayer, as the statute requires. In such case the tax would be void, and might be enjoined, but it could not be paid under protest and recovered again. A voluntary payment of taxes cannot be recovered, in the absence of a statute authorizing such payment and recovery. There is no statute authorizing the payment and recovery of a tax, except the first subdivision of section 162 of the revenue act, which applies only when the property is exempt from taxation, or has once been assessed for the same year and the tax paid.

If the property was added by the assessor, the plaintiff has also taken the wrong remedy. He might have required the assessor to furnish him with a copy of the assessment,

as he proposed to return it to the county authorities. This Mr. Darr neglected to do, and the assessor valued his property, and no complaint was made to the board of equalization. It is not the duty of a taxpayer to assess his own property; he lists his personal property upon the schedule, and submits to the assessor to determine the value thereof for assessment; and when the assessor has done so, if the taxpayer demands it, he must furnish to the taxpayer a copy of such valuation as he puts upon the property. Comp. St. 1911, ch. 77, art. I, sec. 110. If the taxpayer does not exercise this right and so obtain a copy of the valuation, as made by the assessor, he is allowed ample time to examine the assessor's valuation before the sitting of the board of equalization; and, if dissatisfied with his assessment, he may appeal to that board and have it corrected. This affords a simple and inexpensive method of adjusting all questions of valuation, and in most cases is found to be ample without an appeal to the courts, and without the delay in collecting the revenue involved in such appeals. There is no evidence of fraud, and no allegation in the pleadings from which fraud can be inferred. It is as reasonable to presume that Mr. Darr attempted fraud upon the public as it is to assume that the assessor perpetrated fraud upon Mr. Darr. If we imagine that Mr. Darr has been wronged, we still must avoid breaking down the revenue law in the attempt to right that wrong. We certainly cannot disregard the statute in an attempt to do what we imagine to be equity.

The judgment of the district court is

AFFIRMED.

REESE, C. J., dissenting.

It is my belief that the whole discussion by the majority is on entirely too technical grounds. It was evidently the purpose of the legislature to give a remedy in all cases of unjust taxation. To prevent the expensive and long drawn out remedy by injunction, by which the revenues of the state could be tied up, it provided that where a tax, or any

part thereof, was claimed to be illegal, the person against whom the levy was made could pay under protest, the treasurer holding the part claimed to be illegal until within the short time named in the statute; the one paying the same to have the benefit of a speedy and effective remedy at law for testing the question involved, and to recover back his money held by the treasurer, if any should be found to have been illegally demanded. It was never the intention of the legislature to set a trap by which the citizen could be robbed, yielding him no remedy, or, if one is given, to hedge it about with technicalities of procedure to such an extent as to render the protection of his rights uncertain and insecure. The holding calls to mind the ancient rule of pleading which required the plaintiff to name his case. If he gave it a wrong name, no matter what his facts nor how meritorious his demand, he was forever undone, so far as that case was concerned. I do not believe the legislature ever intended to limit the remedies of a person against whom an illegal tax was charged in any such way as is held in the majority opinion. Plaintiff's "cause of action," if he has one, consists of being wrongfully compelled to pay a tax upon property which the demurrer admits he did not have nor own, and which he did not return for taxation. If the petition is true, he is entitled to relief. The construction given to the statute is, I think, too technical and narrow, and does not give effect to the intention of the legislature. To my mind a more liberal construction should be adopted.

FAWCETT, J., concurs in the above dissent.

HAMER, J., dissenting.

I regret being unable to agree with the majority opinion. As I understand this case, there was a petition filed in the district court for Dawson county seeking to recover from the county of Dawson the amount paid by the plaintiff because an additional $30,000 had been added to his list of taxable property without his knowledge or consent, presumably by the assessor or the board of equalization,

but which it is not certain.  From the brief of the appellant it appears that he made out his assessment schedule of personal property, and, after swearing to the same, delivered it to the deputy assessor for Lexington precinct, in Dawson county, in April, 1908; that in said schedule he entered as cash on hand $465, the same being all the cash he had on the 1st day of April, 1908; between the time the said schedule was delivered to the assessor and the time it was entered upon the tax list, some one, without the knowledge or consent of the plaintiff, and without notice to the plaintiff, changed the item of $465 to $30,465; that the appellant was thereupon taxed for said year upon the basis of one-fifth of the said item of $30,465, instead of upon the basis of one-fifth of the said sum of $465, as returned by the appellant in his schedule; that the appellant was absent from the state of Nebraska from the time he delivered said schedule to said deputy assessor until in October of that year, and had no knowledge or notice of the change made in said schedule until after his return to the state of Nebraska; that on the 15th day of April, 1909, appellant caused his personal taxes to be paid, and that part of them which was levied against the one-fifth of said $30,000, so added to his tax list, to be paid under protest, for the reasons aforesaid, the same being $402, and then, within the time required by law, filed an application with the county commissioners asking to have said $402 refunded to him; that said application was rejected by the board of county commissioners, and the appellant appealed from said order of the board to the district court for Dawson county; that he filed in the said district court his petition setting up the facts in the case as before set forth, and that the appellee filed a general demurrer thereto; that the district court sustained said demurrer, and the appellant elected to stand on his petition, the court dismissed the petition, and the appellant has appealed from said order of dismissal to this court.  The demurrer filed by Dawson county admitted the truth of the petition; that is, it admitted that, without the knowledge of the owner, and

after the schedule had been made and had been delivered to the deputy assessor, $30,000 additional had been added to the cash set forth in the schedule. Whether this addition was by the assessor, by the board of equalization, or by some interloper, does not appear. No one may know how or why this was done.

Sections 120-124, ch. 77, art. I, Comp. St. 1911, provide for the county board of equalization, and seem to give it authority to hear cases on appeal as in equity, and without a jury to determine the questions raised before it which relate to the liability of property to assessment, or the amount thereof. The sections before referred to seem to contemplate that the board of equalization may raise the value of the property assessed or lower it, and they can add other property to that contained in the schedule; but they must do these things upon notice to the person interested, or his agent. They are also authorized by subdivision 5 of section 121 to add to the assessment roll any taxable property not included therein and these things are all to be done *upon notice to the property owner*. Subdivision 5 reads: "Also add to the assessment rolls any taxable property not included therein, assessing the same in the name of the owner thereof as the assessors should have done, but no personal property shall be so added unless the owner thereof is previously notified, if he be found in the county."

According to the statement contained in the plaintiff's petition, he was entirely without notice, and the thing must have been done by the assessor, by some unauthorized person, or by the board of equalization. The thing done was unlawfully done. On the statement as made, an additional $30,000 was added to the plaintiff's taxable property, without his knowledge or consent, and without any notice of any kind, and by some unknown person. The value of the property already there was not increased. There were $465 specified in the schedule as the money on hand; $30,000 were added to that money, just as a thousand cows might be put in a tax list; the only differ-

ence being between the use of the word "dollars" and the use of the word "cows." For anything that appears in the petition, the change may have been made after the schedule reached the board of equalization, and without notice. There should be certainty. The legislature did not contemplate that there would be any fraudulent legerdemain of any kind against the interest of the property owner. In effect, the case is like this: I own a farm. On that farm I have horses and hogs. I have no cattle. After I have made out my schedule and have presented it to the assessor, and he has looked over it and there are no cattle listed upon it, somebody adds a *thousand cows* to my schedule. I am not told by whom the addition is made. No one serves any notice upon me. I do not know whether the deputy assessor did it, whether the assessor did it, whether some unauthorized clerk did it, or whether the county board did it; but somebody does it. Does the law contemplate that I should be held to pay the tax on a thousand cows that I do not own, that are not on my farm, and never have been?

The legislature made a provision for the protection of the property of the owner. That provision requires that he shall have notice from the board before there is an increase in the amount of his property or in its value. It would seem that the judgment of the district court ought to be reversed and the case sent back to be tried. When the evidence is taken it might disclose why $30,000 was added, and by whom. In any event, if the testimony should be taken, there would probably be an opportunity to make an intelligent disposition of the case, so that everybody might know what happened, and when, and how, and why. The ingenuity of the majority opinion serves to strengthen the conviction that it is wrong.