### FOURTH ATLANTIC NAT. BANK OF BOSTON v. CITY OF BOSTON,
### and three other cases.

(Circuit Court of Appeals, First Circuit. July 15, 1924.)

Nos. 1744–1747.

**I. Courts ⟜299—Declaration held not to present federal question.**

The declaration in an action to recover taxes paid on national bank shares, which alleged only that the authorities of defendant city, purporting to act under a state statute, assessed a tax on such shares at a greater rate than was assessed on moneyed capital in the hands of individual citizens of the state, that the tax was assessed and collected without warrant of law and contrary to the provisions of the Constitution and laws of the United States, *held* uncertain and ambiguous, and not to clearly present a federal question, which gave a federal court jurisdiction.

**2. Courts ⟜375—Action by national bank to recover taxes paid for its shareholders held subject to conditions precedent imposed by state statute.**

The provision of St. Mass. 1909, c. 490, pt. 2, § 88, that no action to recover back a tax shall be maintained unless commenced within three months after payment of the tax, nor unless the tax was paid after a written protest by the taxpayer, as construed by the courts of the state, imposes a condition precedent to the right of action, and being reasonable and within the powers of the state governs in actions in the federal courts.

**3. Courts ⟜374—State statute prescribing conditions precedent to actions to recover taxes held applicable to action by national bank on behalf of shareholders.**

A state statute imposing conditions precedent to the maintenance of an action to recover taxes paid *held* applicable to an action by a national bank to recover taxes paid as agent or trustee for its shareholders.

In Error to the District Court of the United States for the District of Massachusetts; James Arnold Lowell, Judge.

Separate actions at law by the Fourth Atlantic National Bank of Boston, the National Security Bank, the Citizens' Nat. Bank, and the National Shawmut Bank of Boston against the City of Boston. Judgments for defendant, and plaintiffs bring error. Judgment denying motions by defendant to dismiss for want of jurisdiction reversed.

For opinion below, see National Rockland Bank of Boston v. City of Boston, 296 Fed. 743.

Hollis R. Bailey, of Boston, Mass. (Walter H. Roberts, of Boston, Mass., on the brief), for plaintiff in error Fourth Atlantic Nat. Bank.

Edmund A. Whitman, of Boston, Mass., for plaintiff in error National Security Bank.

⟜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Robert H. Holt (Gaston, Snow, Saltonstall & Hunt, of Boston, Mass., on the brief), for plaintiff in error National Shawmut Bank.

John A. Sullivan and William Harold Hitchcock, Sp. Counsel, both of Boston, Mass. (Jay R. Benton, Atty. Gen., on the brief), for defendant in error.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

BINGHAM, Circuit Judge. The plaintiffs (plaintiffs in error) in these four cases are national banks located and doing business at Boston, Mass. The defendant (defendant in error) is the city of Boston. The suits are actions at law brought in the federal District Court for the District of Massachusetts to recover sums of money paid in taxes and assessed by the city on shares of stock in the respective banks for the years 1917, 1918, 1919, and 1920. In its declaration each plaintiff alleges (1) that the city, "purporting to act under and by virtue of the laws of Massachusetts (chapter 490, part 3, Acts of 1909)," assessed the stock in said bank at "a rate greater than was then assessed upon other moneyed capital in the hands of individual citizens of the state of Massachusetts"; (2) that said statute required plaintiff to pay such tax "under pain of certain penalties"; (3) that the tax was committed to the defendant's collectors for collection and demand for payment was made on or about October 1 in each of the respective years; (4) that the plaintiff paid the tax under compulsion and duress; (5) that the tax thus paid was assessed and collected without warrant of law and contrary to the provisions of the Constitution and laws of the United States and was wholly unlawful. In No. 1747 the plaintiff's declaration contained a further allegation as to the taxes of 1917 and 1918, that they were paid under protest in writing signed by the plaintiff, but as to the payments of the taxes for 1919 and 1920 the allegations in this suit are the same as above stated in the other suits. The sums sought to be recovered range from about $30,000 to over $1,500,-000.

The provisions of chapter 490, part 3, of the Acts of 1909, referred to in the declarations and relied upon, are sections 11 to 20, inclusive, which provisions are also found in General Laws of Massachusetts 1921, c. 63, §§ 1 to 10, inclusive.

The defendant demurred, assigning as grounds of demurrer (1) that the matters alleged in each declaration were insufficient in law to enable the plaintiff to maintain the action; (2) that the declaration in each case does not state a cause of action substantially in accordance with the rules contained in chapter 490, part 2, § 88, of the Acts of 1909, in that (a) the declaration shows that the action was brought to recover certain taxes assessed and paid under the provisions of the statute of Massachusetts, and that it is not alleged that the action was commenced within three months after the several dates when the taxes were paid; and (b) in that it is not alleged that such taxes were paid either after an arrest of the plaintiff, a levy upon its goods, a notice of a sale of its land, or a protest in writing signed by it. The defendant also moved to dismiss on the ground that the declarations did not al-

lege facts stating a federal question, and therefore the District Court, as a federal court, was without jurisdiction.

[1] In the District Court the motion to dismiss was denied, the demurrer was sustained, and judgment was entered for the defendant in the respective cases, and these writs of error were brought.

The pertinent statutes involved are as follows:

United States Revised Statutes:

"Sec. 5219. Nothing herein shall prevent all the shares in any association from being included in the valuation of the personal property of the owner or holder of such shares, in assessing taxes imposed by authority of the state within which the association is located; but the legislature of each state may determine and direct the manner and place of taxing all the shares of national banking associations located within the state, subject only to the two restrictions, that the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state, and that the shares of any national banking association owned by non-residents of any state shall be taxed in the city or town where the bank is located, and not elsewhere. Nothing herein shall be construed to exempt the real property of associations from either state, county, or municipal taxes, to the same extent, according to its value, as other real property is taxed." Comp. St. § 9784.

St. Mass. 1909, c. 490, part 3:

"Sec. 11. All the shares of stock in banks, whether of issue or not, existing by authority of the United States or of the commonwealth, and located within the commonwealth, shall be assessed to the owner thereof in the city or town in which such bank is located, and not elsewhere, in the assessment of state, county and town taxes, whether such owner is a resident of said city or town or not. They shall be assessed at their fair cash value on the first day of May, first deducting therefrom the proportionate part of the value of the real estate belonging to the bank, at the same rate as other money capital in the hands of citizens is by law assessed. The persons who appear from the books of the banks to be owners of shares at the close of the business day last preceding the first day of May shall be deemed to be the owners thereof.

"Sec. 12. Every such bank shall pay the tax so assessed to the collector or other person authorized to receive the same at the time when other taxes in the city or town become due. If not so paid, said tax, with interest thereon at the rate of twelve per cent per annum from the day when it became due, may be recovered from said bank in an action of contract by the collector of such city or town.

"Sec. 13. The shares of such banks shall be subject to the tax paid thereon by the corporation or by the officers thereof, and the corporation and the officers thereof shall have a lien on all the shares in such bank and on all the rights and property of the shareholders in the corporate property for the payment of said taxes."

St. Mass. 1909, c. 490, part. 2:

"Sec. 88. No action to recover back a tax shall be maintained, except as provided in section seventy-four, unless it is commenced within three months after payment of the tax nor unless such tax is paid either after an arrest of the person paying it, a levy upon his goods, a notice of a sale of his land, a protest in writing signed by him, or a withholding of money due to him under the provisions of section eighty-three. In an action founded upon an error or irregularity in the assessment or apportionment of a tax, only the amount in excess of the tax for which the plaintiff was liable shall be recoverable; and no sale, contract or levy shall be avoided solely by reason of such error or irregularity."

In 1916 the Legislature of Massachusetts passed an income tax law, chapter 269, §§ 2 and 11, of which provide as follows:

"Sec. 2. Income of the following classes received by any inhabitant of this commonwealth during the calendar year prior to the assessment of the tax shall be taxed at the rate of six per cent per annum: * * *

"(b) Dividends on shares in all corporations and joint stock companies organized under the laws of any state or nation other than this commonwealth, except national banks and except such foreign corporations as are subject to a tax upon their franchises payable to this commonwealth under the provisions of sections forty-three and fifty-two of part III of chapter four hundred and ninety of the acts of the year nineteen hundred and nine, and acts in amendment thereof and in addition thereto."

"Sec. 11. After the year nineteen hundred and sixteen, income which is taxable under the provisions of section five of this act, and, except as provided in section twenty-one, property, whether held by an executor, administrator, trustee or otherwise, the income of which, if any, is taxed or would be taxable under the provisions of section two of this act if received by an inhabitant of this commonwealth, shall be exempt from taxation under the provisions of chapter four hundred and ninety of the acts of the year nineteen hundred and nine and acts in amendment thereof and in addition thereto: Provided, however, that in determining the amount of any tax upon a corporate franchise under the provisions of part III of said chapter four hundred and ninety, the value of securities, the income of which, if any, is taxed or would be taxed under the provisions of this act if owned by a natural person, shall not be included in the deduction, authorized by section forty-one of said part of said chapter, of securities which, if owned by a natural person resident in this commonwealth, would not be liable to taxation, but, for the purposes of section forty-three of said part of said chapter, shall be included among securities which, if owned by a natural person resident in this commonwealth, would be liable to taxation. This act shall not be construed to impose a tax upon any corporation or person in respect to income derived from property exempted from taxation by provisions of law existing prior to the passage of this act, nor shall anything in this act exempt from taxation, under the provisions of said chapter four hundred and ninety, real estate and tangible personal property."

We are met at the outset with the defendant's motion to dismiss these cases for want of federal jurisdiction. Diversity of citizenship is not alleged and unless the allegations state a federal question the motion must be granted.

The allegations of the declarations are that the defendant, "purporting to act under and by virtue of the laws of Massachusetts, chapter 490, part 3, Acts 1909," assessed upon the shares of the plaintiffs' stock a tax "at a greater rate than was then assessed on moneyed capital in the hands of individual citizens of the state of Massachusetts" and "that the tax * *´ * was assessed and collected without warrant of law and contrary to the provisions of the Constitution and laws of the United States." It is not alleged that the state statute, under which the defendant acted or purported to act in assessing the tax, is void, and facts are not stated showing wherein this is so. The allegations are uncertain and ambiguous, and would seem to mean that the tax was assessed contrary to the provisions of the Constitution and laws of the United States, and was unlawful in that it was assessed at a rate greater than was then assessed on other moneyed capital in the hands of individual citizens of the state; that the tax was too large, and therefore erroneous.

To have presented a federal question it should have been alleged that said chapter 490, part 3, authorized an assessment on shares of stock of the plaintiff banks at the same rate as other moneyed capital in the hands of individual citizens of Massachusetts is by law assessed; that the defendant, purporting to act in pursuance of the statute, assessed the taxes at a greater rate than was assessed on other moneyed capital in the hands of individual citizens of the state; and that the taxes so assessed were repugnant to and in conflict with the Constitution and statutes of the United States, to wit, Rev. St. § 5219, in that the assessors of said city intentionally, by some rule prescribed by themselves, or by some one whom they were bound to obey, assessed the plaintiffs' bank shares at a rate greater than was assessed on other moneyed capital in the hands of individual citizens of the state, and should have further alleged that there was, at the time in question, a large amount of other moneyed capital coming into competition with that of national banks, in defendant city, in the hands of individual citizens of the state, which was assessed at a less rate than the plaintiffs' shares. Stanley v. Supervisors, 121 U. S. 535, 536, 548, 7 Sup. Ct. 1234, 30 L. Ed. 1000. See same case, when previously before the court, 105 U. S 305, 318, 26 L. Ed. 1044; Merchants' National Bank v. Richmond, 256 U. S. 635, 639–641, 41 Sup. Ct. 619, 65 L. Ed. 1135; Greene v. Railroad Co., 244 U. S. 499, 502, 504, 37 Sup. Ct. 673, 61 L. Ed. 1280, Ann. Cas. 1917E, 88. Or it should have been alleged that the defendant, purporting to act under and in pursuance of said chapter 490, part 3 assessed the taxes in question on the shares of stock in plaintiff banks at a greater rate than was assessed on other moneyed capital in the hands of individual citizens; that there was a large amount of other "moneyed capital," to wit, intangible personal property, in the hands of its individual citizens of the state coming into competition with that of national banks, which was exempt from and not subject to taxation at its fair cash value under the laws of the state (Acts Mass. 1916, c. 269, §§ 2, 11); that in consequence of this the provisions of chapter 490, part 3, became inoperative, and were repealed; and that the taxes assessed upon the plaintiffs' shares were repugnant to and in conflict with Rev. St. § 5219, and were illegal and void. Eddy v. First National Bank (C. C. A.) 275 Fed. 550 and cases supra.

It is elementary that "where the existence of a federal question is essential to confer jurisdiction upon a trial court over a cause, the jurisdictional facts must be clearly and unambiguously alleged and not be left to surmise or conjecture." Memphis v. Cumberland Telephone Co., 218 U. S. 624, 627, 643, 644, 31 Sup. Ct. 115, 122 (54 L. Ed. 1185). And we are of the opinion that in these cases the jurisdictional facts essential to confer jurisdiction upon the District Court are not clearly and unambiguously alleged in the declarations, but are left to surmise and conjecture.

As the plaintiffs may be allowed to amend their declarations so as to state a federal question, we deem it advisable, nothwithstanding the conclusion we have reached on the question of jurisdiction, to pass

300 F.—3

upon the questions raised by the demurrers and thus avoid, if possible, the necessity of bringing the cases here a second time.

[2]. In considering the questions raised by the demurrers we proceed on the assumption that the plaintiffs can and will amend their declarations so that they will state facts raising a federal question and show that the taxes assessed are illegal and not merely erroneous. The only question then presented for consideration is whether, the taxes being illegally assessed and collected, the plaintiffs could recover them back without alleging and proving that their suits were commenced within three months after payment of the taxes, and that they were paid either after an arrest, or a levy, or a notice of sale, or a protest in writing, as called for by section 88 above quoted.

Section 88 is a recognition of the common-law right of a taxpayer to sue for and recover taxes which he has paid involuntarily, the assessment of which was illegal and wholly void or void with respect to severable portions of the property, the amount collected on which is ascertainable (Stanley v. Supervisors, 121 U. S. 535, 549, 7 Sup. Ct. 1234, 30 L. Ed. 1000), on which right to sue the statute imposes certain restrictions. The only ones material for us to consider are those requiring that the taxes be paid under a written protest and the action brought within three months after payment of the tax. These requirements, as construed by the Massachusetts court, are conditions precedent to the right of action; the three months provision is not a mere statute of limitations. Wheatland v. City of Boston, 202 Mass. 258, 88 N. E. 769. In that case it was also held that the statute (section 88) was applicable to a suit to recover back a tax which was void because laid under an unconstitutional statute as well as to one void for any other reason.

The plaintiffs having failed to allege compliance with the conditions of the statute, the objections to the maintenance of the actions were properly raised by demurrer (Wheatland v. City of Boston, 202 Mass. 258, 88 N. E. 769; McRae v. New York, N. H. & H. R. R. Co., 199 Mass. 418, 421, 85 N. E. 425, 15 Ann. Cas. 489; Lever Bros. Co. v. Commonwealth, 232 Mass. 22, 121 N. E. 516), if the statute is applicable to a suit brought by a national bank to recover taxes paid by it as trustee or agent for the owner or owners of its shares upon which the tax is assessed; for it seems to be conceded that an action may properly be brought by the bank as the statutory taxpaying representative of the shareholders (Eddy v. First National Bank [C. C.] 275 Fed. 550; National Bank of Commerce v. New Bedford, 155 Mass. 313, 29 N. E. 532; National Bank of Commerce v. City of New Bedford, 175 Mass. 257, 56 N. E. 288; First National Bank of Greeley v. Board of Commissioners of Weld County, 44 Sup. Ct. 385, 68 L. Ed. ——, decided by the Supreme Court of the United States April 7, 1924; Bank of California v. Richardson, 248 U. S. 476, 480, 481, 39 Sup. Ct. 165, 63 L. Ed. 372; Cummings v. National Bank, 101 U. S. 153, 156, 25 L. Ed. 903; Raymond v. Chicago Traction Co., 207 U. S. 20, 28 Sup. Ct. 7, 52 L. Ed. 78, 12 Ann. Cas. 757).

[3] The plaintiffs contend that the statute is not applicable in such a case. But as it is a statute of general application we think it applica-

ble in these cases provided the conditions imposed are not unreasonable. In fact we regard the question as practically concluded by the decision in National Bank of Greeley v. Board of County Commissioners, supra. That was a suit brought by a national bank to recover the amount of certain taxes levied on its shares of stock for the fiscal years of 1913 and 1914 and paid under protest, in which the complaint was demurred to. The statutes of the state under which the tax was assessed contained provisions whereby a taxpayer, if his property had been taxed too high, or illegally assessed, might appear before the proper administrative tribunal and have the assessment corrected. The Supreme Court of the state, in construing its statutes, held that an application by a taxpayer to the taxing authority to correct an excessive or illegal assessment was a condition precedent to the maintenance of an action to recover the amount of taxes levied and paid, and as it did not appear in the complaint that the plaintiff had applied for such correction prior to the final laying of the tax, the action could not be maintained. The Supreme Court of the United States recognized the applicability of the local statute, held it a bar to the action, and refused to pass upon the merits of the case and determine whether the taxes were assessed and collected in contravention of the federal statute, section 5219.

A like application and result was reached in the case of Burrill v. Locomobile Co., 258 U. S. 34, 42 Sup. Ct. 256, 66 L. Ed. 450. That was an action of tort for damages brought in the federal District Court of Massachusetts against the treasurer of Massachusetts, grounded upon his participation in the collection of a tax assessed under a statute of the state asserted to be repugnant to the Constitution of the United States and void. The plaintiff was a foreign corporation doing business in the state. The statutes of the state gave a right of action to the aggrieved corporation against the state by petition to its Supreme Court within six months after payment of the tax, provided for the prompt payment of any sum adjudged to be illegally exacted, and made the remedy exclusive. It was held (1) that the remedy against the state, backed by its responsibility, was adequate, and the state could limit the right of a foreign corporation coming into it and the liability of its own citizens by making only the author of the wrong responsible for it; (2) that the time (six months) for filing the petition was not unreasonably short in this class of cases; (3) that the Constitution of the United States leaves the remedies to Congress and the states for the enforcement of a right against persons who take part in enforcing a state law that the Constitution invalidates; (4) that in trials at common law the laws of the states are the rules of decision, except when the Constitution, treaties, or statutes of the United States otherwise require or provide; (5) that if there were no statute the common law of the state would supplement the Constitution as it would the statutes of the state; and (6) that the common law of a state may be modified by statute until in some substantial sense it impairs substantive constitutional rights. Whether the plaintiff, a foreign corporation, having come into the state to do business, could maintain its statutory right of action against the state in the federal courts, notwithstanding the statute authorizing the suit prescribed that it be

brought in the State Supreme Court, and if it could not, whether the exclusive remedy against the state would be adequate, was not decided. The foreign corporation having gone into the state to do business, the exclusive statutory remedy authorizing suit against the state in the state court only, was held applicable and a bar to the suit in the federal court against the treasurer.

Neither do we regard the conditions of the statute here in question unreasonable. The three months provision, when considered in the light of the circumstances under which the taxes were assessed, does not impose an unreasonable restriction upon the right of the tax payer to contest the validity of the tax. Under the provisions of the state tax law, proceedings for the assessment of a tax begin in April by the bank filing a list of its shareholders on or before April 10; the tax is assessed as of April 1; after that the tax bills are sent out and the tax may be paid at any time before November 1, without interest; and, whenever it is paid, under section 88 the taxpayer has three months thereafter within which to bring suit. This court, in passing upon section 88, in Long v. Norman, 289 Fed. 5, regarded these restrictions upon the right to sue as reasonable, which proposition we here affirm.

The judgments of the District Court denying the motions to dismiss are reversed, and the cases are remanded to that court for further proceedings not inconsistent with this opinion, with costs in this court to the defendants in error.