[No. 23230.   *En Banc.*   July 24, 1931.]

CASCO COMPANY, *Appellant*, v. THURSTON COUNTY *et al.*,
*Respondents.*[1]

[1]Reported in 2 P. (2d) 677.

*James P. Neal,* for appellant.

*Harold P. Troy, Smith Troy, The Attorney General,* and *John A. Homer, Assistant,* for respondents.

*L. B. da Ponte, Thomas Balmer, Venables, Graham & Howe, Bogle, Bogle & Gates, Robert H. Evans, A. R. Hilen, Geo. H. Rummens, Chas. Paul, F. M. Dudley, I. S. Crawford,* and *A. J. Laughon, Amici Curiae.*

TOLMAN, C. J.—Appellant, as plaintiff, began this action in the court below, seeking to enjoin the collection of the tax assessed against certain real property in Thurston county. It is not claimed that the tax is void or that the property taxed is exempt from taxation, but the basis of the action is the alleged gross over-valuation of the property for taxation purposes, resulting in a greatly excessive tax.

It seems to be conceded that the complaint states what would be a cause of action but for chapter 62, Laws of 1931, p. 201, and perhaps one purpose in bringing the suit was to obtain a construction of that statute.

A demurrer to the complaint was interposed and sustained; the plaintiff elected to stand on its complaint, and a judgment of dismissal followed, from which this appeal is prosecuted.

The act (Laws of 1931, chapter 62, p. 201) provides:

"Section 1. Injunctions and restraining orders shall not be issued or granted to restrain the collection of any tax or any part thereof, or the sale of any property for the non-payment of any tax or part thereof, except in the following cases:

"(1) Where the law under which the tax is imposed is void; and

"(2) Where the property upon which the tax is imposed is exempt from taxation.

"Sec. 2. In all cases of the levy of taxes for public revenue which are deemed unlawful or excessive by the person, firm or corporation whose property is taxed, or from whom such tax is demanded or enforced, such person, firm or corporation may pay such tax or any part thereof deemed unlawful, under written protest setting forth all of the grounds upon which such tax is claimed to be unlawful or excessive; and thereupon the person, firm or corporation so paying, or his or its legal representatives or assigns, may bring an action in the superior court against the state, county or municipality by whose officers the same was collected, to recover such tax, or any portion thereof, so paid under protest: *Provided,* That this act shall not be deemed to enlarge the grounds upon which taxes may now be recovered: *And provided further,* That no claim need be presented to the state or county or municipality, or any of their respective officers, for the return of such protested tax as a condition precedent to the institution of such action."

In the following sections of the act, there is provision made, in the event of recoveries, for the payment of the judgments thus obtained, with costs and interest, where allowed, by the issuance of warrants against the fund created by the act, to be known as "the county tax refund fund," and for the levy of taxes to supply such fund with the means to retire all such warrants. Section 5 of the act reads:

"Sec. 5. The action for the recovery of taxes so paid under protest shall be brought in the superior court of the county wherein the tax was collected: *Provided,* That where the property against which the tax is levied consists of the operating property of a railroad company, telegraph company or other public service company whose operating property is located in more than one county and is assessed as a unit by any state board or state officer or officers, the complaining taxpayer may institute such action in the superior court of any one of the counties in which such tax is payable, and may join as parties defendant in

said action all of the counties to which the tax or taxes levied upon such operating property were paid or are payable, and may recover in one action from each of the county defendants the amount of the tax, or any portion thereof, so paid under protest, and adjudged to have been unlawfully collected, together with legal interest thereon from date of payment, and costs of suit." Laws 1931, p. 203.

Three principal reasons are advanced, any one of which, if well-founded, would be sufficient ground for holding the act to be unconstitutional. The reasons stated are:

"(1) The procedure sought to be established constitutes an unlawful encroachment upon the powers and functions of the judiciary as determined by the constitution.

"(2) It provides for and does create an unlawful discrimination against classes of taxpayers and favoring another class of taxpayers through an attempted classification of possible procedure.

"(3) It attempts to deprive certain taxpayers of the inherent right to invoke the equity powers of the court and does not supply an adequate or speedy method as compensation for the loss of such inherent rights."

We will consider these in their appropriate order.

We can see here no encroachment upon the constitutional power of the courts, but simply and solely a legislative attempt to provide an adequate legal remedy where, if a legal remedy before existed, it was a doubtful or inadequate one, so that the courts, while retaining to the full all of the equitable powers inherent in them, will find only lessened occasions for the use of such powers. We venture to say that many of what were originally equitable rights have by statutes been made legal rights; and, so far as we are aware, there is no judicial authority for holding that the statutory transformation of an equitable right into

a legal right is an encroachment upon the equitable powers of the courts.

The final answer to this question is therefore to be found in the answer to the third question, which is, Is the legal remedy afforded by the statute an adequate and sufficiently speedy one?

In natural sequence the third question is next in order, and it appears to be one which has frequently engaged the attention of the courts of other jurisdictions.

A Federal statute which has been in effect since 1867 (Revised Statutes, § 3224; U. S. C. A., Title 26, § 154) reads:

"No suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court."

In passing upon this statute, the Federal circuit court, in *Pullan v. Kinsinger*, 20 Fed. Cas. 44, said:

"How far does it change the common law? By that law the citizen could not replevin property seized for the collection of a tax. It was deemed impolitic to suffer such a remedy, and the laws of the states, nearly all of which have enacted them, declaring the same thing, are but assertions of this principle. According to the English equity, an injunction would not go in any case at all analogous to that at bar. Wide as the departures are from these principles in some of the state courts, all disclaim the jurisdiction per se. By the rarity and exceptional character of their interposition they authorize the assertion of the general rule that there was no remedy by injunction to prevent the collection of an illegal tax. Irrespective of all legislation, there was neither replevin nor injunction. The wrong must be submitted to and suit at law brought to recover damages for its infliction.

"In what, then, is the constitution or the general principles of good government violated? In order to save the citizen the delay and expense of a suit to recover back the payment which he deems unlawful, a

speedy and inexpensive appeal is given to the commissioner, who is directed to refund all moneys paid upon illegal assessment. If dissatisfied with his decision, the citizen may sue in the courts, which, up to that of last resort, are open. He may sue his government as freely as his neighbor, and when judgment is recovered, the national treasury is devoted to its payment. Neither judicial forms nor trial by jury is denied.''

The Federal supreme court has upheld this act. In *Snyder v. Marks,* 109 U. S. 189, it is there said:

''The inhibition of § 3224 applies to all assessments of taxes, made under color of their offices, by internal revenue officers charged with general jurisdiction of the subject of assessing taxes against tobacco manufacturers. The remedy of a suit to recover back the tax after it is paid is provided by statute, and a suit to restrain its collection is forbidden. The remedy so given is exclusive, and no other remedy can be substituted for it. Such has been the current of decisions in the circuit courts of the United States, and we are satisfied it is a correct view of the law.''

To the same effect, see *Dodge v. Osborn, Commissioner of Internal Revenue,* 240 U. S. 118; and also *Thompson v. Schwaebe,* 22 Fed. (2d) 518, written by the late Judge Rudkin, where it is said: ''This remedy would seem to be full, complete and adequate.''

Colorado has a statute requiring the refund to any taxpayer, without abatement or discount, of any tax or portion thereof found to be excessive or illegal. Referring to this statute, the Federal supreme court, in *Union Pacific R. R. Co. v. County Commissioners of Weld County,* 247 U. S. 282, said:

''If that section is still in force, unqualified and unmodified, the conclusion below that in this case there is a plain, adequate and complete remedy at law, and therefore that relief by injunction is not admissible, is fully sustained by our decisions. *Singer Sewing Machine Co. v. Benedict,* 229 U. S. 481, and cases there

cited; *Pittsburgh, etc., Ry. Co. v. Board of Public Works,* 172 U. S. 32; *Arkansas Building & Loan Assn. v. Madden,* 175 U. S. 269; *Raymond v. Chicago Union Traction Co.,* 207 U. S. 20, 38; *Johnson v. Wells, Fargo & Co.,* 239 U. S. 234, 243; *Greene v. Louisville & Interurban R. R. Co.,* 244 U. S. 499, 519.''

The supreme court of Colorado has also upheld the act in *Kendrick v. A. Y. and Minnie Min. & Mill Co.,* 63 Colo. 214, 164 Pac. 1161, saying:

''But the law has provided a plain, speedy, and adequate remedy at law for the hearing and determination of the grievances of plaintiff. It was the duty of complainants in this case to have paid the whole of the tax assessed, and to have proceeded under authority of sec. 5750, Rev. Stat. 1908.''

Passing upon a somewhat similar statute of the state of Indiana, the United States supreme court, in *Indiana Manufacturing Co. v. Koehne,* 188 U. S. 681, again refused an injunction, and held that the legal remedy of the statute was adequate.

A Massachusetts statute having the same effect as our own has been upheld by the Federal courts. *Long v. Norman,* 289 Fed. 5; *Fourth Atlantic National Bank of Boston v. City of Boston,* 300 Fed. 29; *Burrill v. Locomobile Co.,* 258 U. S. 34.

Michigan has a similar statute, which has been upheld by its supreme court. *Eddy v. Township of Lee,* 73 Mich. 123, 40 N. W. 792.

The Montana statute seems to be in effect exactly like our own, and it was upheld in *Montana Ore Purchasing Co. v. Maher,* 32 Mont. 480, 81 Pac. 13.

The Nebraska statute and ruling are the same. *Darr v. Dawson County,* 93 Neb. 93, 139 N. W. 852.

North Carolina likewise. *Raleigh & G. R. Co. v. Lewis,* 99 N. C. 62, 5 S. E. 82.

So also in Oklahoma, where it is expressly held that the statutory remedy is plain, speedy and adequate.

*Black v. Geissler,* 58 Okla. 335, 159 Pac. 1124; *Blake v. Young,* 128 Okla. 153, 261 Pac. 923.

South Carolina also has a statute against the issuance of injunctions in tax cases, and has held it valid and to be an adequate remedy. *Fleming v. Power,* 77 S. C. 528, 58 S. E. 430; *National Loan & Exchange Bank of Greenwood v. Jones,* 103 S. C. 80, 87 S. E. 482.

South Dakota has the same statute and the same ruling. *Zimmerman v. Corson County,* 39 S. D. 167, 163 N. W. 711.

And Tennessee likewise. *Louisville & Nashville R. R. Co. v. State,* 55 Tenn. 663.

But it is argued that, because the successful litigant must accept a warrant drawn on a fund which may not be in a position to respond for a period of months, the warrant is no adequate replacement of the money paid on the excessive tax, and that, as a result, the remedy is neither speedy nor adequate. It is also urged that a taxpayer who has so recovered a judgment and received a warrant will be taxed by the levy to meet the requirements of the fund, and by the payment of subsequently increased taxes he will be obliged to pay in part his own warrant.

The answer seems to be that all governments pay in warrants; and the mere fact that a warrant, because of the depletion of the fund upon which it is drawn, is not at once reducible to money, makes it none the less the only means of paying public officers, employees and those who supply the daily needs of the state and its local subdivisions. Such a warrant is negotiable, in the commercial sense, at least, and those who must can usually obtain its present value in cash, or, if they think proper to hold it, receive interest upon it until it is redeemed. The state appears to have done all it can to be fair to warrant holders.

"All county, city, town and school warrants, and all warrants or other evidences of indebtedness, drawn upon or payable from any public funds, shall bear interest at a rate not greater than eight per centum per annum, unless a less rate be specified therein." Rem. Comp. Stat., § 7302.

"It shall be the duty of every public officer issuing public warrants to make monthly investigation to ascertain the market value of the current warrants issued by him and he shall, so far as practicable, fix the rate of interest (not in any event, however, exceeding the maximum rate hereinbefore established therefor) on the warrants issued by him during the ensuing month so that the par value shall be the market value thereof." Rem. Comp. Stat., § 7303.

It would seem that the method of repayment thus provided by the statute is an adequate one.

The remaining argument under this head hardly requires an answer. The counties levy such taxes as are needed to meet their annual requirements, and no more. If the taxpayer enjoins the collection of his tax, then to that extent there is a deficiency created which must be made up by a subsequent levy upon all taxable property, his with the rest; and whether he withholds the money in the first instance, thus calling for an increased levy, or pays and secures its repayment to him, thus causing an increased levy, would seem to be a distinction without a difference. In any event, all those taxpayers who have contractual or other demands against a county, by collecting their demands, are receiving in part money they have paid in as taxes, and are causing a decrease of public funds which, as taxpayers, they will be called upon ratably to replenish on subsequent levies.

"We next consider the contention that the act permits the taking of property and grants the power to lease, sell or dispose of it without an offer to pay compensation therefor or a determination of it in advance.

It has long been settled that the taking of property for public use by a state or one of its municipalities need not be accompanied or preceded by payment, but that the requirement of just compensation is satisfied when the public faith and credit are pledged to a reasonably prompt ascertainment and payment, and there is adequate provision for enforcing the pledge." *Joslin Manufacturing Co. v. Providence,* 262 U. S. 668.

See also *Janes v. City of Racine,* 155 Wis. 1, 143 N. W. 707; *Barton v. Edwards,* 120 Ark. 239, 179 S. W. 354; *Hinds County v. Johnson,* 133 Miss. 591, 98 So. 95.

■ Are the provisions of § 5 of the act such as to create an unlawful discrimination and to offend against the constitution?

As we understand it, the public service instrumentalities mentioned in this section are the only ones having property in more than one county whose property is assessed as a unit by the state. That being so, they naturally form a class distinct from other taxpayers, and it would appear natural and reasonable to so classify them as to reduce litigation, and simplify and speed the final adjustment of their tax controversies, which might otherwise congest the court dockets of every county in the state. We see nothing arbitrary about such a classification. It seems well within the limits we have heretofore upheld. *Puget Sound Power & Light Co. v. Seattle,* 117 Wash. 351, 201 Pac. 449; 207 Pac. 689; *State v. Cannon,* 125 Wash. 515, 217 Pac. 18; *State v. Jones,* 137 Wash. 556, 243 Pac. 1.

Certainly, it is well within the limits set by the United States supreme court in the recent case of *State Board of Tax Commissioners of Indiana v. Jackson,* 283 U. S. 527, 51 Sup. Ct. 540, 75 Law Ed. 1248, in which it is said:

"Notwithstanding the differences disclosed between chain and other stores, the court below found that 'all

persons engaged in the operation of one or more stores . . . belong to the same class, for occupational tax purposes, as plaintiff, and should pay the same license fee, regardless of the number of stores owned and operated by them,' and that any other classification is arbitrary and unconstitutional. It is this holding which the appellants challenge.

"The principles which govern the decision of this cause are well settled. The power of taxation is fundamental to the very existence of the government of the states. The restriction that it shall not be so exercised as to deny to any the equal protection of the laws does not compel the adoption of an iron rule of equal taxation, nor prevent variety or differences in taxation, or discretion in the selection of subjects, or the classification for taxation of properties, businesses, trades, callings, or occupations. [Citing authorities.] The fact that a statute discriminates in favor of a certain class does not make it arbitrary, if the discrimination is founded upon a reasonable distinction [citing authority] or if any state of facts reasonably can be conceived to sustain it [citing authorities]. As was said in *Brown-Forman Co. v. Kentucky, supra* (217 U. S. 573, 54 L. ed. 887, 30 S. Ct. 578):

"'A very wide discretion must be conceded to the legislative power of the state in the classification of trades, callings, businesses or occupations which may be subjected to special forms of regulation or taxation through an excise or license tax. If the selection or classification is neither capricious nor arbitrary, and rests upon some reasonable consideration of difference or policy, there is no denial of the equal protection of the law.'"

Much more might be said, and many more authorities might be cited, on each point here involved, but able counsel by their resourcefulness and ingenuity have provoked an already over-long discussion.

The judgment appealed from is affirmed.

PARKER, MITCHELL, HOLCOMB, MAIN, BEALS, MILLARD, and BEELER, JJ., concur.